UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

HERMÉS OF PARIS, INC.,                          :
                                                :
                           Petitioner,          :         Case No.:
                                                :
              - against -                       :         **ECF Case**
                                                :
MATTHEW SWAIN,                                  :
                                                :
                           Respondent.          :
------------------------------------------------------------- x

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S PETITION TO COMPEL
ARBITRATION AND TO ENJOIN PENDING STATE COURT ACTION**

---

Lawrence R. Sandak, Esq.
Edna D. Guerrasio, Esq.
PROSKAUER ROSE LLP
One Newark Center 18th Floor
Newark, New Jersey 07102
(973) 274-3200
*Attorneys for Plaintiff Hermés of Paris, Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT ...........................................................................................1

RELEVANT HISTORY ........................................................................................................2

ARGUMENT ........................................................................................................................5

I.      FEDERAL LAW REQUIRES THAT THE PARTIES' ARBITRATION
        AGREEMENT BE ENFORCED.............................................................................5

II.     THIS COURT IS THE PROPER FORUM FOR COMPELLING
        ARBITRATION .......................................................................................................5

III.    THE COURT SHOULD COMPEL ARBITRATION............................................6

        **A.**   There is an Agreement to Arbitrate Between Swain and Hermés....................7

        **B.**   The Scope of the Agreement to Arbitrate Includes the Claims
               Identified in the State Court Complaint .........................................................8

IV.     THIS COURT SHOULD ENJOIN THE PENDING STATE COURT
        ACTION ...................................................................................................................9

CONCLUSION....................................................................................................................12

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aerotel, Ltd. v. RSL Commc'ns, Ltd.*,
  99 F. Supp. 2d 368 (S.D.N.Y. 2000)....................................................................5, 8

*Arakawa v. Japan Network Grp.*,
  56 F. Supp. 2d 349 (S.D.N.Y. 1999).......................................................................7

*Arthur Andersen LLP v. Carlisle*,
  556 U.S. 624 (2009).................................................................................................8

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011).................................................................................................9

*AT&T Techs., Inc., v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986).................................................................................................5

*Cap Gemini Ernst & Young U.S. LLC v. Arentowicz*,
  No. 04 Civ. 0299 (DAB), 2004 U.S. Dist. LEXIS 11337
  (S.D.N.Y. June 22, 2004).........................................................................................7

*Cap Gemini Ernst & Young, U.S., LLC v. Nackel*,
  346 F.3d 360 (2d Cir. 2003).....................................................................................7

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities
Master Fund, Ltd.*,
  598 F.3d 30 (2d Cir. 2010).....................................................................................11

*Collins & Aikman Prods. Co. v. Bldg. Sys.*,
  58 F. 3d 16 (2d Cir. 1995)........................................................................................8

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985).................................................................................................5

*Farr & Co. v. Cia. Intercontinental De Navegacion De Cuba*,
  243 F.2d 342 (2d Cir. 1957).....................................................................................6

*Genesco, Inc. v. T.Kakiuchi & Co.*,
  815 F.2d 840 (2d Cir. 1987).....................................................................................7

*Great W. Mortg. Corp. v. Peacock*,
  110 F.3d 222 (3d Cir. 1997).....................................................................................7

*Greenlight Capital, L.P. v. Apple, Inc.*,
No. 13 Civ. 900 (RJS), 2013 WL 646547 (S.D.N.Y. Feb. 22, 2013) .....................................11

*Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*,
230 F.3d 549 (2d Cir. 2000).........................................................................................................7

*In re Burger Chef Sys. Inc. v. Baldwin Inc.*,
365 F. Supp. 1229 (S.D.N.Y. 1973).........................................................................................10

*In re Necchi Sewing Mach. Sales Corp. v. Carl*,
260 F. Supp. 665 (S.D.N.Y. 1966)...........................................................................................10

*In re Petition of the Home Ins. Co.*,
908 F. Supp. 180 (S.D.N.Y. 1995).............................................................................................6

*Int'l Fashion Prods., B.V. v. Calvin Klein, Inc.*,
No. 95 Civ. 0982 (JFK), 1995 WL 92321 (S.D.N.Y. March 7, 1995) ....................................11

*JP Morgan Secs. v. La. Citizens Prop. Ins.*,
712 F. Supp. 2d 70 (S.D.N.Y. 2010).........................................................................................6

*Kamerling v. Massanari*,
295 F.3d 206 (2d Cir. 2002)......................................................................................................11

*Lloyd v. Hovensa*,
369 F.3d 263 (3d Cir. 2004).......................................................................................................9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983).........................................................................................................................5

*Oil Basins Ltd. v. Broker Hill Proprietary Co. Ltd.*,
613 F. Supp. 483 (S.D.N.Y. 1985).............................................................................................6

*Paramedics Electromedicina Comercial LTDA v.*
*GE Med. Sys. Info. Techs., Inc.*,
No. 02 Civ. 9369 (DFE), 2003 WL 23641529 (S.D.N.Y. June 4, 2003)................................11

*Pervel Indus., Inc. v. TM Wallcovering, Inc.*,
675 F. Supp. 867 (S.D.N.Y. 1987), *aff'd*, 871 F.2d 7 (2d Cir. 1989)....................................10

*Reliance Nat'l Ins. Co. v. Seismic Risk Ins. Servs., Inc.*,
962 F. Supp. 385 (S.D.N.Y. 1997)......................................................................................10, 11

*WeWork Companies Inc. v. Zoumer*,
No. 16 Civ. 457, 2016 WL 1337280 (S.D.N.Y. Apr. 5, 2016)..................................................6

*Wright v. SFX Entm't, Inc.*,
No. 00 Civ. 5354 (SAS), 2001 WL 103433 (S.D.N.Y. Feb. 7, 2001) .....................................7

iii

**STATUTES**

9 U.S.C. § 3.................................................................................................................5, 9

9 U.S.C. § 4..............................................................................................................1, 5, 6

28 U.S.C. § 2283................................................................................................1-2, 10, 12

## PRELIMINARY STATEMENT

Shortly after his hire by Petitioner Hermés of Paris, Inc. ("Petitioner" or "Hermés"), Respondent Matthew Swain ("Swain") entered into an arbitration agreement with Hermés, requiring him to arbitrate, before a mutually selected arbitrator from the American Arbitration Association ("AAA"), any and all disputes relating to or arising out of his employment with Hermés, including statutory discrimination claims.  Swain expressly agreed that arbitration before the AAA would be the "sole, exclusive, and final forum for any remedy" in the event a dispute could not be resolved through informal discussion or voluntary mediation.  He expressly acknowledged that he was waiving any right he may have to have his dispute heard in a court or resolved by a jury.  The agreement includes a forum selection provision establishing New York City as the exclusive site of the AAA arbitration and a New York choice of law provision.

In flagrant disregard of his promise to resolve disputes with Hermés through a dispute resolution procedure, and to arbitrate any unresolved claims before the AAA in New York City, Swain commenced an action in New Jersey Superior Court, asserting statutory discrimination and contract-based claims against Hermés that fall squarely within the scope of the agreement to arbitrate that he signed.  Swain, through his counsel, does not deny that he signed the dispute resolution agreement with Hermés; rather Swain's counsel baldly asserts that "Swain never agreed to any alternate dispute resolution of his LAD [New Jersey Law Against Discrimination] claims" and that "[t]he NJ [New Jersey] Superior Court is where his LAD claims will be decided pursuant to his constitutional right to a jury trial."  Swain's position is more than an inexcusable attempt to renege on a promise.  It is a violation of federal law.  Hermés hereby petitions this Court, under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, and the Anti-Injunction Act, 28

U.S.C. § 2283, to compel the arbitration of Swain's claims before the AAA in New York and to enjoin his pending New Jersey state court action.

## RELEVANT HISTORY

On August 28, 2015, Swain, an employee of Hermés, entered into an agreement with Petitioner to arbitrate any and all disputes arising out of his employment, with several limited exceptions not relevant here. (*Ex. B.*[1])  The standalone agreement, which is 5 pages in length and titled, "Dispute Resolution Procedure" (the "DRP Agreement"), provides for a three-step dispute resolution process: employees may first have "internal discussions" with their supervisors or Human Resources; if the dispute is not thereby resolved, either party may initiate voluntary mediation before the AAA at Petitioner's expense; a dispute not resolved through mediation is to be resolved through "final and binding arbitration" before "a single arbitrator" who is to be "jointly select[ed] from the AAA arbitrator panel." (*Id.*, pp. 1-2.)  Such an arbitration is to be "held in [the] City, State and County of New York," under the "AAA Employment Arbitration Rules" at Petitioner's expense. (*Id.*, p. 2.)  The DRP Agreement specifies that the parties will arbitrate the following types of claims:

> all legal and equitable claims, demands, and controversies, of whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law, between you and [Hermés] … and its employees … arising out of or related to: (i) the terms and conditions of your employment with, or separation from [Hermés] … ; (ii) any agreements (written or oral) now in existence or that may come into existence in the future between you and [Hermés] …; (v) claims arising from or related to alleged discrimination, harassment, or retaliation in employment (including, but not limited to, race, sex, sexual orientation, religion, national origin, age, marital status, physical or mental disability or handicap, or medical condition) under any federal, state and/or other governmental law, statue, regulation, and/or ordinance…; (vi) any

---

[1] All Exhibits referenced herein are attached to the Declaration of Lawrence R. Sandak, dated August 5, 2016, submitted herewith and incorporated herein by reference.

> claims relating to leaves of absence, benefits, or compensation or
> post-termination benefits under federal, state and local laws…

(*Id.*, p. 5.)  The DRP Agreement further states that:

> By signing below, you agree (i) to mediate; and (ii) to arbitrate,
> with arbitration being the sole, exclusive and final forum for any
> remedy.  You acknowledge you are waiving any right you may
> have to a court or jury trial.  … Your signature below indicates
> your understanding and acceptance of this Dispute Resolution
> Procedure.  … Either you or [Hermés] may file a request with a
> court for injunctive relief to enforce this Dispute Resolution
> Procedure.  New York law shall apply to this agreement.

(*Id.*, pp. 2-3.)

Swain worked at Hermés between July 31, 2015 and November 6, 2015, at which time

his employment was terminated.  (*Petition* ¶¶ 15, 17.)  Eight months after his termination, Swain

sent Hermés a draft complaint, threatening litigation for alleged violations of the New Jersey

Law Against Discrimination ("NJLAD").  (*Ex. C.*)  Hermés responded to Swain by providing a

copy of the DRP Agreement to his attorney and reminding him that the parties were obligated to

resolve any employment-related disputes through the dispute resolution process that includes

voluntary submission to mediation, followed by binding arbitration, in accordance with the DRP

Agreement.  (*Id.*)  On July 18, 2016, counsel for the parties discussed their mutual desire to

attempt to resolve Swain's claims through mediation and Hermés therefore notified Swain that it

intended to commence AAA mediation under the terms of the Dispute Resolution Procedure

("DRP"), as outlined in the DRP Agreement. (*Exs C, E.*)  On July 19, 2016, Hermés took steps to

initiate mediation with the AAA, in accordance with the DRP Agreement, by mailing a

mediation submission form to the AAA.  (*Ex. E.*)

On that same day, July 19, 2016, in utter disregard of the DRP Agreement, Swain filed a

complaint in the Superior Court of New Jersey, Essex County, Docket No.: L4996-16, against

Hermés and a Hermés employee, Lorenzo Bautista, as well as unidentified corporate entities and individuals, alleging claims of discrimination, hostile work environment, retaliation, individual supervisor liability and breach of contract, all arising from Swain's employment.[2] (*Ex. A*.) Swain's counsel notified Hermés of the filing in an e-mail, in which he cavalierly dismissed his client's obligations under the DRP stating that Swain "never agreed to any alternate dispute resolution of his LAD claims." (*Ex. C*.) Despite the crystal clear waiver of his right to a jury trial and the broad scope of the DRP Agreement's coverage, including claims of discrimination under any federal or state law, Swain's counsel also informed Hermés that the DRP Agreement "makes no mention of anti-discrimination laws" and insisted that "[t]he NJ Superior Court is where his LAD claims will be decided pursuant to his constitutional right to a jury trial." (*Id.*)

A week later, on July 26, 2016, a representative from the AAA sent the parties the initial mediation information packet. (*Ex. D*.) Swain's attorney responded, "absent a court order to the contrary, we are not a party to this purported mediation." (*Id.*) Hermés confirmed its interest in proceeding with the mediation, under the DRP, and took steps to preserve the possibility of mediation. (*Id.*) However, Swain's refusal to participate in mediation under the DRP, and his express waiver of his right to mediate under the DRP, has triggered the arbitration stage of the DRP.

---

[2] The complaint alleges that during Swain's 90-day employment with Hermés, Swain was subjected to a hostile work environment and received less favorable treatment than other employees because of his sexual orientation. Swain further alleges that when he objected to the alleged discriminatory behavior, Hermés retaliated against him and ultimately terminated his employment, which forced him to forfeit a signing bonus. The complaint pleads four causes of action under the NJLAD, N.J.S.A. 10:5-1 – 49, and one common law cause of action for breach of contract. Hermés and Bautista were served on August 4, 2016.

## **ARGUMENT**

### I.  **FEDERAL LAW REQUIRES THAT THE PARTIES' ARBITRATION AGREEMENT BE ENFORCED**

"Federal law and policy strongly favor arbitration as a means of alternative dispute resolution."  *Aerotel, Ltd. v. RSL Commc'ns, Ltd.*, 99 F. Supp. 2d 368, 372 (S.D.N.Y. 2000).  *See also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  The FAA specifically declares that arbitration agreements are "valid, irrevocable, and enforceable" and "[b]y its terms … leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original); 9 U.S.C. §§ 3, 4.  Thus a court must compel "arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *AT&T Techs., Inc., v. Commc'ns Workers of Am.*, 475 U.S. 643, 653 (1986) (citation omitted).

The parties' arbitration agreement, as described above, falls squarely within the types of agreements promoted and protected by the FAA.  As a matter of policy and contract, this Court must enforce its provisions.

### II.  **THIS COURT IS THE PROPER FORUM FOR COMPELLING ARBITRATION**

Section 4 of the FAA provides that a "party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28… for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.

5

It is a "well-established principle that only the district court in the district where the arbitration will proceed may order arbitration." *In re Petition of the Home Ins. Co.*, 908 F. Supp. 180, 182 (S.D.N.Y. 1995). This is because "under the Arbitration Act, arbitration must proceed in the district where the order directing arbitration is filed, *see* 9 U.S.C. § 4, and a federal district court may only compel arbitration in its own district." *Id.*[3] *See Oil Basins Ltd. v. Broker Hill Proprietary Co. Ltd.*, 613 F. Supp. 483, 486 (S.D.N.Y. 1985) ("[t]he Federal Arbitration Act makes it clear that … a federal district court may only compel arbitration in its own district"). Thus, the proper forum for a motion to compel arbitration is the district wherein the arbitration is to proceed in accordance with the parties' agreement. *Farr & Co. v. Cia. Intercontinental De Navegacion De Cuba,* 243 F.2d 342, 346 (2d Cir. 1957); *WeWork Companies Inc. v. Zoumer*, No. 16 Civ. 457, 2016 WL 1337280, at *2 (S.D.N.Y. Apr. 5, 2016); *JP Morgan Secs. v. La. Citizens Prop. Ins.*, 712 F. Supp. 2d 70, 81-82 (S.D.N.Y. 2010).

Since the DRP Agreement provides expressly for arbitration in the City of New York, and only this Court may compel arbitration in the City of New York under the FAA, this Court – and not any other court – is the correct forum for determining whether arbitration should be compelled.

## III.    THE COURT SHOULD COMPEL ARBITRATION

A party aggrieved by the refusal of another party to arbitrate under an arbitration agreement may petition a United States District Court for an order directing that such arbitration proceed in a manner consistent with the agreement. *See* 9 U.S.C. § 4. Under this principle, courts routinely compel arbitration pursuant to an arbitration agreement, even when the opposing

---

[3] 9 U.S.C. § 4 provides that, "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed."

party has attempted to avoid arbitration by initiating a state court action, as was done here. *See, e.g., Cap Gemini Ernst & Young U.S. LLC v. Arentowicz*, No. 04 Civ. 0299 (DAB), 2004 U.S. Dist. LEXIS 11337, at *7 (S.D.N.Y. June 22, 2004) (petition to compel arbitration of NJLAD claims granted even though respondent had previously filed a state court action under NJLAD). *See also, Great W. Mortg. Corp. v. Peacock*, 110 F.3d 222, 234 (3d Cir. 1997) (affirming District Court's order granting appellee's petition to compel arbitration of appellant's NJLAD claims where appellant had previously filed a state court action under NJLAD).

The Second Circuit has declared that in deciding whether to compel arbitration, a District Court must determine only:  (1) whether there is an agreement to arbitrate; and (2) the scope of the agreement to arbitrate. *Cap Gemini Ernst & Young, U.S., LLC v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003). *See also Wright v. SFX Entm't, Inc.,* No. 00 Civ 5354 (SAS), 2001 WL 103433, at *2 (S.D.N.Y. Feb. 7, 2001) (citing *Genesco, Inc. v. T.Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987)).

## A.  <u>There is an Agreement to Arbitrate Between Swain and Hermés</u>

In determining whether parties have agreed to arbitrate, "courts apply generally accepted principles of contract law. … [P]ursuant to New York law, a person who signs a contract is presumed to know its contents and to assent to them." *Arakawa v. Japan Network Grp.*, 56 F. Supp. 2d 349, 352 (S.D.N.Y. 1999) (citation omitted).[4]

The arbitration agreement signed by Swain and Hermés is a stand-alone document entitled "Dispute Resolution Procedure," that concerns the resolution of disputes between an Hermés employee and Hermés, which is defined to include its "officers, executives and

---

[4] Pursuant to the terms of the DRP, New York law governs the parties' dispute and the parties' agreement.  (*Ex. B*, p. 5.)  *See Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.,* 230 F.3d 549, 556 (2d Cir. 2000).

employees." [5]  (*Ex. B,* p. 5.)  As expressly stated in the text of the DRP Agreement, Swain

acknowledged that by signing the Agreement he was "agree[ing] (i) to mediate; and (ii) to

arbitrate, *with arbitration being the sole, exclusive, and final forum for any remedy*."  (*Id.,* p. 2.)

(emphasis supplied).  In signing the agreement, Swain further acknowledged that he was,

"waiving any right [he] may have to a court or jury trial."  *Id.*  Further, in bold text, directly

above his signature line, Swain attested that he "read this agreement, underst[oo]d it and [was]

voluntarily entering into it."  (*Id.*, p. 4.)  There is simply no question that the parties voluntarily

entered into an agreement that requires Swain to arbitrate his claims against Hermés and

Bautista, as a Hermés employee.

## B.   The Scope of the Agreement to Arbitrate Includes the Claims Identified in the State Court Complaint

With regard to the scope of an arbitration clause, the Courts in this circuit have stated,

> Federal policy strongly favors arbitration as an alternative dispute resolution process.  We are instructed that any doubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration.  Accordingly, federal policy requires us to construe arbitration clauses as broadly as possible.  We will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

*Collins & Aikman Prods. Co. v. Bldg. Sys.,* 58 F. 3d 16, 19 (2d Cir. 1995) (internal citations

omitted).  The Second Circuit has further instructed that a "broadly-worded arbitration clause …

creates a strong presumption in favor of arbitrability that applies with even greater force."

*Aerotel*, 99 F. Supp. 2d at 372.  The broadly-worded arbitration provision in the DRP

---

[5] Swain's allegations against Lorenzo Bautista, the individually named manager and a current Hermés employee, also fall within the scope of the DRP Agreement and should similarly be compelled to arbitration.  As stated in the DRP Agreement, "the disputes covered … include all legal and equitable claims, demands, and controversies … between you and [Hermés], its corporate parent… and its … employees." (*Ex. B,* p.5)  Accordingly, Bautista, as a Hermés employee, is a third party beneficiary of the DRP Agreement and Swain's claims against him must be brought in arbitration.  *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (arbitration agreement held enforceable with respect to individuals not named name in agreement, who did not sign agreement, but who were incorporated by reference as third party beneficiaries).

Agreement, by its terms, covers "all legal and equitable claims, demands, and controversies, of whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law…."  (*Ex. B,* p. 5.)  The DRP Agreement then specifically states that claims of "discrimination, harassment, or retaliation in employment… including, but not limited to … sexual orientation… under any federal, state and/or governmental law, statute, regulation, and/or ordinance" as well as claims concerning "compensation," are encompassed by the Agreement. (*Ex. B*, p. 5.)  The DRP Agreement thus unquestionably covers Swain's purported discrimination, hostile environment, retaliation and contract-based claims, and indeed expressly identifies these claims as falling within its scope.  For these reasons, arbitration must be compelled.

## IV.   THIS COURT SHOULD ENJOIN THE PENDING STATE COURT ACTION

The FAA provides for the stay of an action subject to arbitration in addition to an order to arbitrate pursuant to the agreement.  *See* 9 U.S.C. § 3.  Section 3 of the FAA states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

*Id.*  Thus, section 3 of the FAA "requires courts to stay litigation of arbitral claims pending arbitration of those claims[.]"  *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 344 (2011). "The effect of that stay is twofold:  it relieves the party entitled to arbitrate of the burden of continuing to litigate the issue while the arbitration process is on-going, and it entitles that party

9

to proceed immediately to arbitration without the delay[.]"  *Lloyd v. Hovensa,* 369 F.3d 263, 270 (3d Cir. 2004).

This Court has authority to enjoin the concurrent New Jersey state court action pursuant to the Anti-Injunction Act, which provides that a federal court may enjoin a state court action in three limited circumstances, (1) where "expressly authorized by Act of Congress"; (2) "where necessary in aid of its jurisdiction"; or (3) "to protect or effectuate its judgments."  28 U.S.C. § 2283.  The latter two exceptions to the Anti-Injunction Act have repeatedly been relied upon by federal courts to enjoin concurrent state court actions in conjunction with an order compelling arbitration.  *See Pervel Indus., Inc. v. TM Wallcovering, Inc.,* 675 F. Supp. 867, 870 (S.D.N.Y. 1987) ("case law is clear that ['necessary in aid of jurisdiction'] provision provides authority for a federal district court to stay a parallel state proceeding pending arbitration"), *aff'd,* 871 F.2d 7 (2d Cir. 1989); *Reliance Nat'l Ins. Co. v. Seismic Risk Ins. Servs., Inc.*, 962 F. Supp. 385, 391 (S.D.N.Y. 1997) (court granted order to compel arbitration and enjoined California state court action within statutory exception to Anti-Injunction Act); *In re Burger Chef Sys. Inc. v. Baldwin Inc.,* 365 F. Supp. 1229, 1233-34 (S.D.N.Y. 1973) (Michigan state court action stayed under Anti-Injunction Act and parties compelled to arbitrate); *In re Necchi Sewing Mach. Sales Corp. v. Carl*, 260 F. Supp. 665, 669 (S.D.N.Y. 1966) (court enjoined Oklahoma state court action to "protect" and "effectuate" its order to compel arbitration in accordance with Anti-Injunction Act).

Setting aside the Court's authority to enjoin the New Jersey state court action pursuant to 28 U.S.C. § 2283, Hermés' petition should further be granted because: (1) Swain unequivocally consented to Hermés' application for injunctive relief to enforce the DRP when he signed the DRP Agreement and, therefore, cannot now oppose Hermés' application (*Ex. B*, p. 3); and (2)

10

even without Swain's consent, this Court has authority under more general principles of equity to enjoin Swain from pursuing his state court action.

A party seeking injunctive relief must establish "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (citation omitted). Hermés easily establishes its entitlement to an injunction.

"The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction." *Kamerling v. Massanari,* 295 F.3d 206, 214 (2d Cir. 2002). Hermés will undoubtedly suffer irreparable harm if it is deprived of its federal and state contractual right to arbitrate its dispute with Swain, as it will be forced to defend against a state court action while simultaneously arbitrating before the AAA, subjecting itself to potentially conflicting results. *See Reliance Nat'l Ins. Co.*, 962 F. Supp. at 391 (losing a right to arbitration constitutes irreparable harm); *Int'l Fashion Prods., B.V. v. Calvin Klein, Inc.*, No. 95 Civ. 0982 (JFK), 1995 WL 92321, at *2 (S.D.N.Y. March 7, 1995) (same).

The "likelihood of success" element requires only that petitioner convince the court that it is more likely than not – that is greater than a fifty percent chance – that it will succeed on its claims. *Greenlight Capital, L.P. v. Apple, Inc.,* No. 13 Civ. 900 (RJS), 2013 WL 646547, at *4 (S.D.N.Y. Feb. 22, 2013). Given that there is no dispute that the parties entered into a valid and binding arbitration agreement which explicitly covers Swain's claims under the NJLAD and New Jersey common law, Hermés easily satisfies this burden. *See Paramedics Electromedicina Comercial LTDA v. GE Med. Sys. Info. Techs., Inc.*, No. 02 Civ. 9369 (DFE), 2003 WL

23641529, *11-13 (S.D.N.Y. June 4, 2003) (court enforced arbitration agreement and enjoined simultaneous court action in Brazil under preliminary injunction analysis).

Under either the Anti-Injunction Act or the court's inherent equitable powers, an order to enjoin the New Jersey state court action is appropriate because Swain must be held to the agreement he executed which requires him to arbitrate his employment discrimination and contract claims before the AAA.  The injunction will relieve Hermés of the burden of having to address Swain's state court action during the pending arbitration.

## CONCLUSION

For the reasons set forth above, Hermés respectfully requests that the Court: (i) grant its Petition; (ii) compel Swain to arbitrate his claims against Hermés and Bautista; and (iii) enjoin the New Jersey Superior Court action, Docket No.: ESX-L-4996-16, pending resolution of the arbitration.

Dated:    Newark, New Jersey
          August 5, 2016

                                        PROSKAUER ROSE LLP
                                        Attorneys for Plaintiff


                                        By: _/s/ Lawrence R. Sandak_____
                                            Lawrence R. Sandak
                                            Edna D. Guerrasio
                                            One Newark Center
                                            Newark, New Jersey  07102-5211
                                            (973) 274-3200
                                            lsandak@proskauer.com
                                            eguerrasio@proskauer.com

12