Christopher W. Hager, Esq. – NJ Attorney ID #032731994
NIEDWESKE BARBER HAGER, LLC
98 Washington Street
Morristown, New Jersey 07960
Phone (973) 401-0064
Fax    (973) 401-0061
www.n-blaw.com
Attorneys for Plaintiff Matthew Swain

| | |
|---|---|
| MATTHEW SWAIN,<br><br>Plaintiff,<br><br>v.<br><br>HERMÈS OF PARIS; LORENZO BAUTISTA, Individually; ABC Corporation(s) 1-5; and JOHN and/or JANE DOE(S) 1-5,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: ESSEX COUNTY<br><br>DOCKET NO. L 4996-16<br><br>Civil Action<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff Matthew Swain, residing at 5 Lawrence Street, Bloomfield, Essex County, State of New Jersey, through his attorneys, Niedweske Barber Hager, LLC, by way of Complaint against Defendants Hermès of Paris and Lorenzo Bautista, individually, ABC Corporation(s) 1-5, and John and/or Jane Doe(s) 1-5, alleges as follows:

## STATEMENT OF FACTS

**A.   PARTIES**

1. From in or about October, 2000, to July, 2015, Plaintiff Matthew Swain was employed by Gucci America, Inc., including in its store at the Mall at Short Hills.

2. The Mall at Short Hills is located at 1200 Morris Turnpike, Short Hills, New Jersey.

3. Mr. Swain's excellence in the fashion retail industry enabled him to be promoted by Gucci within a few years from a selling supervisor position to the General Manager position.

4. For more than a decade, Mr. Swain served as Gucci's General Manager, including in its boutique and separate shop within Saks Fifth Avenue located at the Mall at Short Hills.

5. Because of his demonstrated abilities, Defendant Hermès of Paris – which also operated an upscale fashion boutique in the Mall at Short Hills – began to aggressively recruit Mr. Swain in or about May, 2015.

6. Defendant Hermès induced Mr. Swain with descriptions by separate upper managers about their longevity with Hermès, how he should expect the same type of career stability at Hermès, and with an increased compensation package from what he was earning from Gucci.

7. On July 9, 2015, Defendant Hermès of Paris offered Mr. Swain the position of Managing Director of its Short Hills boutique, with a base salary of $135,000 (an increase from his Gucci salary), a guaranteed $10,000 sign-on bonus to be paid after ninety days, additional bonus of up to 25% of his base salary, and participation in Hermès comprehensive benefits program along with other valuable benefits that included participation in Hermès 401(K) savings plan, clothing allowance, and four weeks of paid vacation (an increase from Hermès three week standard for managing directors).

8. Mr. Swain accepted the offer by Defendant Hermès of Paris.

9. After providing Gucci with four weeks advance notice of his resignation, Mr. Swain began his employment for Hermès on July 31, 2015.

10. Defendant Hermès of Paris was Plaintiff's "employer" as defined under the LAD.

11. As detailed below, shortly after commencing his employment for Defendant Hermès of Paris, Mr. Swain was subjected to a severe and pervasive hostile work environment.

12. Plaintiff Matthew Swain is homosexual.

13. Defendants violated Plaintiff Matthew Swain's civil rights under the New Jersey Law Against Discrimination to not suffer discrimination and harassment because of his sexual orientation.

14. Defendant Hermès of Paris is one of the most renowned fashion brands in the world.

15. Defendant Hermès of Paris operates approximately two hundred fifty stores worldwide, including its fashion boutique in the Mall at Short Hills where it employed Plaintiff Matthew Swain.

16. Hermès also employed a full time human resources department.

17. Defendant Lorenzo Bautista was an upper manager and supervisory employee for Defendant Hermès of Paris during Plaintiff Matthew Swain's employment.

18. Defendant Bautista was employed by Defendant Hermès of Paris in its boutique at the Mall at Short Hills during Plaintiff Matthew Swain's employment.

19. Defendant Bautista is a New Jersey resident with an address of 34 Bloomfield Avenue, Essex Fells, New Jersey.

20. Defendant Bautista participated in, substantially assisted, and aided and abetted Defendants' employment discrimination, hostile work environment and retaliation against Plaintiff Swain.

21. ABC Corporation(s) 1-5 are fictitious entities liable to Plaintiff Swain for discrimination, hostile work environment and/or retaliation, but whose true name(s) is/are currently unknown to the Plaintiff.

22. John and/or Jane Doe(s) 1-5 are fictitious individuals liable to Plaintiff Swain for discrimination, hostile work environment and/or retaliation, but whose true name(s) is/are currently unknown to the Plaintiff.

### B. HERMÈS OF PARIS SUBJECTED PLAINTIFF MATTHEW SWAIN TO A DISCRIMINATORY AND HOSTILE WORK ENVIRONMENT BECAUSE OF HIS SEXUAL ORIENTATION

23. Plaintiff Swain was supervised by Hope Steutel, Hermès Vice President, Eastern Region.

24. Steutel worked out of Hermès corporate offices in Manhattan, which was also where Hermès human resources department was located.

25. Plaintiff satisfactorily performed his Managing Director position at Hermès during the first few months of his employment.

26. Plaintiff Swain did not receive any training about Hermès workplace policies and / or procedures prohibiting sexual harassment and discrimination, despite the existence of such policies and / or procedures.

27. Plaintiff nevertheless observed during that period that certain co-employees, including Defendant Bautista and Anthony Catucci (a friend of Bautista's

4

since high school), were treating him less favorably than other employees at the Hermès boutique.

28.  In or about October, 2015, a complaint was submitted to Defendant Hermès human resources department that Bautista and Catucci had uttered repeated slurs and epithets about Plaintiff's sexual orientation.

29.  The slurs by Bautista and / or Catucci were contemptuous and intolerant, and included, without limitation, that Plaintiff was a "fag," was "fucking gay," and was a "fucking faggot who needs to go."

30.  The acrimonious and homophobic statements by Hermès employees, including a manager, were uttered in the presence of other Hermès employees.

31.  The acrimonious and homophobic statements by Hermès employees, including a manager, created and perpetuated a hostile work environment for Plaintiff Matthew Swain.

32.  The acrimonious and homophobic statements by Hermès employees, including a manager, are probative as to whether the harassment of Plaintiff Swain was sexually discriminatory.

33.  The acrimonious and homophobic statements by Hermès employees, including a manager, are probative as to whether Hermès knew or should have known that sexual harassment was occurring despite the existence of an anti-harassment policy.

34.  The acrimonious and homophobic statements by Hermès employees, including a manager, are helpful to interpret otherwise ambiguous acts.

35.  The acrimonious and homophobic statements by Hermès employees, including a manager, are relevant to determining Defendants' liability.

36. The acrimonious and homophobic statements by Hermès employees, including a manager, support an inference that Plaintiff Matthew Swain was targeted for abuse because he is homosexual.

37. Hermès did not conduct an effective investigation of the sexual harassment complaint.

38. Instead, in or about mid-October, 2015, Hope Steutel called Plaintiff Swain to state that a "perception of the team" existed about him in Hermès Short Hills' workplace.

39. When Plaintiff asked Steutel for examples or further explanation, she refused.

40. The "perception of the team" referenced by Steutel was based on information tainted by the discriminatory intentions of Hermès employees including Bautista and Catucci.

41. Steutel directed Plaintiff to talk to Hermès Short Hills staff in order for everyone to "move on."

42. Plaintiff followed Steutel's directions and spoke to Hermès employees.

43. By email to Steutel dated October 28, 2015, Plaintiff reported being told, among other things, that there was a "plot to get rid of him" by co-employees including Bautista and Catucci.

44. Plaintiff also wrote that he was informed Catucci angrily stated, with regard to his schedule prepared by Plaintiff, that "we need to get rid of this fag."

45. Plaintiff concluded this email by stating the hostile work environment "need[ed] to be discussed with HR and resolved as soon as possible."

46. On October 29, 2015, Plaintiff emailed Ginny Kaltabanis, Hermès Senior Director of Human Resources.

47. In this email Plaintiff recounted his hostile work environment complaint made to Steutel and explained that the situation was disruptive to him on a personal level because "some of the comments made about [him] stem from personal attitudes which are inappropriate and unsettling."

48. Kaltabanis also wrote an email to Plaintiff Swain on October 29, 2015, but it criticized Plaintiff instead of furthering Hermès alleged "culture of maintaining an environment of friendly collegiality."

49. Kaltabanis admitted to Hermès receipt of complaints from its Short Hills store, and claimed that Hermès "commenced an investigation from [its] corporate offices" as it was obligated to do, but criticized Plaintiff for speaking to the Hermès employees despite Steutel's direction to him to do just that.

50. Kaltabanis discredited Plaintiff's report of what was stated to him by the Hermès Short Hills' staff, and stated that "[t]he perceptions of one group of employees cannot be deemed more or less valid than another simply because you interviewed them yourself."

51. Kaltabanis knew that Plaintiff's co-employees witnessed his sexual orientation being disparaged by Hermès Short Hills' staff uttering offensive slurs such as "fag."

52. However, in violation of her duties and responsibilities as Hermès upper manager in human resources to remedy workplace sexual harassment, Kaltabanis rejected

the statements by Hermès Short Hills' staff that Plaintiff was subjected to a discriminatory and hostile work environment because of his sexual orientation.

53.     October 29, 2015, was also ninety days after Plaintiff Swain began his Hermès employment.

54.     Defendant Hermès failed to pay Plaintiff the $10,000 bonus he was entitled to receive after ninety days of employment.

55.     Instead, Plaintiff was directed to meet with Kaltabanis on November 6, 2015, in Hermès Manhattan offices.

56.     During that meeting, Kaltabanis again criticized Plaintiff for going on a "fact-finding mission" instead of doing his job.

57.     When Plaintiff asked Kaltabanis how Hermès was going to address the complaints regarding his sexual orientation, she stated to him that they were more appropriately deemed "concerns."

58.     Plaintiff asked Kaltabanis to please explain the "concerns," but she refused.

59.     Kaltabanis proceeded to terminate Plaintiff's Hermès employment for the pretextual reason that he was "not the right fit."

60.     Plaintiff was, and is, devastated economically, emotionally and physically by Defendant Hermès of Paris's discriminatory mistreatment of him because he is gay.

61.     Because of the Defendants' aforementioned misconduct, Plaintiff Swain has been caused economic damages.

62. Because of the Defendants' aforementioned misconduct, Plaintiff Swain has been caused permanent emotional distress, pain, suffering, disability, impairment, and the loss of enjoyment of life.

63. Because of the Defendants' aforementioned conduct, Plaintiff Swain's pre-existing physical and emotional conditions have been aggravated and permanently worsened.

## FIRST COUNT

### Sexual Orientation Discrimination – Law Against Discrimination

64. Plaintiff Swain repeats each and every allegation contained in Paragraphs 1 through 63 of this Complaint as if set forth at length in this First Count.

65. Plaintiff Swain belonged to a protected class.

66. Plaintiff Swain was actually performing his job prior to being terminated.

67. Plaintiff Swain was terminated.

68. Plaintiff Swain was subjected to disparate treatment because of his sexual orientation.

69. The Defendants violated the LAD when they terminated Plaintiff Swain because of his sexual orientation.

70. As a result of the Defendants' actions and inactions, Plaintiff Swain has suffered and continues to suffer loss of income, loss of benefits, and other economic damages.

71. As a further result of the Defendants' actions and inactions, Plaintiff Swain has been caused permanent emotional distress, disability, impairment, pain, suffering and loss of enjoyment of life.

72. As a further result of the Defendants' actions and inactions, Plaintiff Swain's preexisting physical and emotional conditions have been exacerbated, causing him additional permanent physical injury and damages.

WHEREFORE, Plaintiff Swain demands judgment against the Defendants, jointly and severally, for the following relief:

    a.)    back pay;

    b.)    front pay;

    c.)    emotional distress compensatory damages;

    d.)    aggravation of preexisting condition damages;

    e.)    punitive damages;

    f.)    interest;

    g.)    monetary gross up to compensate for any negative tax consequences;

    h.)    attorneys' fees and legal costs; and

    i.)    other relief as the Court may deem appropriate.

## SECOND COUNT

### Hostile Work Environment – Law Against Discrimination

73. Plaintiff Swain repeats each and every allegation contained in paragraphs 1 through 72 of this Complaint as if set forth at length in this Second Count.

74. The conduct and comments previously set forth occurred because of Plaintiff's sexual orientation.

75. The conduct and comments were severe and/or pervasive enough to make a reasonable person who is homosexual believe the working conditions were altered and that the working environment was intimidating and harassing.

76. As a result of the Defendants' failures and inactions, they are liable for all damages resulting from their hostile work environment.

77. As a direct and proximate result of the Defendants' actions and inactions, Plaintiff Swain has suffered and continues to suffer loss of income, loss of benefits, and other financial losses.

78. As a direct and proximate result of the Defendants' actions and inactions, Plaintiff Swain has experienced and continues to experience, pain, suffering, disability, impairment and the loss of enjoyment of life.

79. As a further result of the Defendants' actions and inactions, Plaintiff Swain's preexisting physical and emotional conditions have been exacerbated, causing him additional permanent physical injury and damages.

WHEREFORE, Plaintiff Swain demands judgment against the Defendants, jointly and severally, for the following relief:

    a.) back pay;

    b.) front pay;

    c.) emotional distress compensatory damages;

    d.) aggravation of preexisting condition damages;

    e.) punitive damages;

    f.) interest;

    g.) monetary gross up to compensate for any negative tax consequences;

    h.) attorneys' fees and legal costs; and

    i.) other relief as the Court may deem appropriate.

## THIRD COUNT

### Retaliation – Law Against Discrimination

80. Plaintiff Swain repeats each and every allegation contained in paragraphs 1 through 79 of this Complaint as if set forth at length in this Third Count.

81. The Defendants retaliated against Plaintiff Swain because of his objections to and / or the complaint(s) about Defendants' sexual orientation discrimination and/or harassment.

82. Defendants violated the New Jersey Law Against Discrimination when they subjected Plaintiff Swain to adverse employment actions in retaliation for his protected acts under the LAD.

83. As a result of the Defendants' actions and inactions, Plaintiff Swain has suffered and continues to suffer loss of income, loss of benefits, and other economic losses.

84. As a further result of the Defendants' actions and inactions, Plaintiff Swain has been caused, and continues to be caused, emotional distress, disability, impairment, pain, suffering and loss of enjoyment of life.

85. As a further result of the Defendants' actions and inactions, Plaintiff Swain's preexisting physical and emotional conditions have been exacerbated, causing him additional permanent physical injury and damages.

WHEREFORE, Plaintiff Swain demands judgment against the Defendants, jointly and severally, for the following relief:

    a.) back pay;

    b.) front pay;

    c.) emotional distress compensatory damages;

  d.)  aggravation of preexisting condition damages;

  e.)  punitive damages;

  f.)  interest;

  g.)  monetary gross up to compensate for any negative tax consequences;

  h.)  attorneys' fees and legal costs; and

  i.)  other relief as the Court may deem appropriate.

## FOURTH COUNT

### LAD Individual Liability – Lorenzo Bautista

86. Plaintiff Swain repeats each and every allegation contained in paragraphs 1 through 85 of this Complaint as if set forth at length in this Fourth Count.

87. Defendant Bautista aided and abetted the violation of Plaintiff's LAD rights.

88. Defendant Bautista was generally aware of his role in the overall illegal, unlawful, or tortious activity at the time that he provided the assistance.

89. Defendant Bautista knowingly and substantially assisted Defendant Hermès of Paris's discrimination, harassment and / or retaliation against Plaintiff Swain.

90. As a direct and proximate result of Defendant Bautista's actions and inactions, Plaintiff Swain has been caused and continues to suffer loss of income, loss of benefits, and other economic losses.

91. As a direct and proximate result of Defendant Bautista's actions and inactions, Plaintiff Swain has been caused and continues to be damaged by emotional distress, pain, suffering, disability, impairment, and the loss of enjoyment of life.

92. As a direct and proximate result of Defendant Bautista's actions and inactions Plaintiff Swain's preexisting physical and emotional conditions have been exacerbated,

causing him additional permanent physical injury and damages.

WHEREFORE, Plaintiff Swain demands judgment against Defendant Lorenzo Bautista, individually, for the following relief:

a.) back pay;

b.) front pay;

c.) emotional distress compensatory damages;

d.) aggravation of preexisting condition damages;

e.) punitive damages;

f.) interest;

g.) monetary gross up to compensate for any negative tax consequences;

h.) attorneys' fees and legal costs; and

i.) other relief as the Court may deem appropriate.

## FIFTH COUNT

### Breach of Contract

93. Plaintiff Swain repeats each and every allegation contained in paragraphs 1 through 92 of this Complaint as if set forth at length in this Fifth Count.

94. Defendant Hermès of Paris's offered Plaintiff a $10,000 bonus after ninety days of employment.

95. Plaintiff accepted Defendant Hermès of Paris's offer.

96. Defendant Hermès of Paris did not pay Plaintiff the $10,000 bonus he was entitled to receive after ninety days of employment.

97. Defendant Hermès of Paris breached its contract to pay Plaintiff a $10,000 bonus after ninety days of employment.

WHEREFORE, Plaintiff Swain demands judgment against Defendant Hermès of Paris for any and all damages caused by its breach of contract.

## JURY DEMAND

Plaintiff Swain hereby demands trial by jury on all issues.

## DESIGNATION OF TRIAL ATTORNEY

Christopher W. Hager, Esq., is hereby designated as trial counsel.

NIEDWESKE BARBER HAGER, LLC
Attorneys for Plaintiff Matthew Swain

By: /s/ Chris Hager
CHRISTOPHER W. HAGER

Dated: July 18, 2016

## CERTIFICATION PURSUANT TO RULE 4:5-1

I, Christopher W. Hager, certify as follows:

I am a Partner in the law firm of Niedweske Barber Hager, LLC, attorneys for Plaintiff Matthew Swain in this matter. To the best of my knowledge, the matter in controversy is not the subject of any other action pending or contemplated in any court or arbitration proceeding, and no parties are known who should be joined in this action.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

By: /s/ Chris Hager
Christopher W. Hager

Dated: July 18, 2016

15